VACATED PURSUANT TO ORDER DATED 7/16/08 (DOC. #50)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| FILTER SPECIALISTS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 3:05 CV 802 |
| XIN LI, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

**I. BACKGROUND**

This matter is before the court on the motion for default judgment filed by plaintiff Filter Specialists, Inc. (D.E. # 15.) Despite the large amount of money at issue, because defendant Xin Li appears to have willfully failed to defend this lawsuit, the court grants default judgment to plaintiff.

On December 21, 2005, plaintiff filed a complaint against defendant alleging that defendant breached an employment agreement by committing a host of torts involving plaintiff's business. (D.E. #1.) These alleged torts took place in China, where plaintiff had hired defendant to manage its manufacturing facility. (*Id.* at 2-3.)

Plaintiff served process on defendant via publication, as authorized by Magistrate Judge Nuechterlein, on August 24, 2006. (D.E. # 8-9.) Defendant has failed to answer. On February 16, 2007 plaintiff requested that the clerk of the court enter defendant's default, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 55(a), (D.E. # 13)

and the clerk did so on February 21, 2007. (D.E. # 14.) Plaintiff then moved for default judgment. (D.E. # 15.)

## II. SUBJECT MATTER JURISDICTION

Plaintiff filed this action, claiming this court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). (D.E. # 1 at 1.) Section 1332(a)(1) provides the federal courts with jurisdiction to hear non-federal claims, if the parties are "citizens" of different states and the amount in question exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

In its complaint, plaintiff alleged that it was a Delaware corporation with its principal place of business in Indiana, and that the amount in question exceeded $75,000. (D.E. # 1 at 1.) It also asserted that defendant was "a United States citizen" with his principal residence in China and "his United States residence" in Greendale, Wisconsin. (*Id.*) After determining that this allegation did not sufficiently demonstrate where defendant was a citizen, that is, where he was domiciled, *see Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007) (allegations of residence not sufficient to demonstrate diversity), the court issued an order directing plaintiff to demonstrate where defendant was a citizen on the date the complaint was filed. (D.E. # 16.)

Plaintiff responded by filing an affidavit from one of its executives. (D.E. # 17.) This affidavit alleged that at the time defendant was hired to work for plaintiff, he lived with his wife and children in Greendale, Wisconsin, and continued to live there throughout his employment with plaintiff. (*Id.* at 1.) The affidavit also claimed that plaintiff listed his home phone number as the number of his home in Greendale, that

2

plaintiff corresponded with defendant at that address, both before and after filing the complaint in this case, that plaintiff had accounts at Wisconsin banks, that the distribution forms for plaintiff's 401k retirement account listed his Greendale address as his home, and that, after he was fired, plaintiff provided defendant with a plane ticket to Milwaukee (Greendale is a Milwaukee suburb) from Shanghai, China. (*Id.* at 1-2.)

This affidavit makes no legal arguments, but plaintiff is clearly hoping that its factual allegations, taken together, are enough to demonstrate that defendant is a citizen of Wisconsin. "Citizenship for the purposes of diversity jurisdiction is domicile," *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002), and establishing domicile, requires "physical presence in a state, with intent to remain there . . . ." *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) (internal citation omitted). The citizenship of the parties, for the purposes of diversity jurisdiction, is "assessed at the time that the action is filed." *Freeport-McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428 (1990).

Here, plaintiff has adequately shown that defendant was physically present in Wisconsin, and demonstrated intent to remain there. He lived there with his family from, at the latest, 2001 on, in a home that he owned. (D.E. # 17 at 1.) Even after leaving the country for work, he listed his home in Wisconsin as his address. (*Id.*) Further, defendant received important financial communications at that home, both before and after the complaint was filed. (*Id.*). Other documents filed by plaintiff show that defendant's wife continues to live at the home, and that he employs legal counsel based in Milwaukee. (D.E. # 7 at 1-2 (noting defendant is represented by the Cross Law Firm));

3

*see* Cross Law Firm Home Page, http://www.crosslawfirm.com (listing main office in Milwaukee). In addition, there is no evidence showing that he lives or has lived in any other part of the United States besides Wisconsin. It thus appears, based on the allegations before this court, that defendant was physically present in Wisconsin and intends to remain there.

There is, however, evidence that defendant lives in China. Indeed, in its complaint, plaintiff alleged that defendant's "principle [sic] residence" was in China, not the United States. (D.E. # 1 at 1.) This muddles the situation because "in order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (emphasis added). A U.S. citizen who is domiciled in a foreign country is essentially "stateless" under section 1332(a) and foils diversity jurisdiction. *See id.* at 829; *ISI Internacional, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (no diversity jurisdiction where a partner in one of the defendant law firms was an American citizen domiciled in Canada); *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 805 (7th Cir. 1997) ("for diversity purposes, an expatriate is deemed neither an alien nor a citizen of any State"). Thus, if defendant is not domiciled in the U.S., but rather in China, this court lacks jurisdiction over the case.

But in order to change his domicile to China, defendant would have to go to China (which he has already done) and intend "to remain there." *See Bethesda Lutheran Homes & Servs. Inc. v. Leean*, 122 F.3d 443, 448 (7th Cir. 1997); *see also McCann v. Newman*

4

*Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (to change domicile person "must take up residence at the new domicile and he must intend to remain there"). While plaintiff alleged that defendant's "principle [sic] residence" is in China, there is no evidence that he intends to remain there. Indeed, the facts that he keeps a home in Wisconsin, that his wife continues to live at that home, and that defendant directs important financial correspondence to that address indicate an intent to "remain" in Wisconsin. Based on the allegations currently before it, this court finds that plaintiff has adequately demonstrated that defendant is domiciled in Wisconsin, and thus is a citizen of that state for the purposes of diversity jurisdiction. *See Denlinger*, 87 F.3d at 216. Thus, this court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1).

**III. DISCUSSION**

FEDERAL RULE OF CIVIL PROCEDURE 55 controls the entry of default judgment. The rule first requires that the clerk of court make an entry of default. *See* FEDERAL RULE OF CIVIL PROCEDURE 55(a). Then, default judgment may be entered. FEDERAL RULE OF CIVIL PROCEDURE 55(b). As noted above, the clerk entered default judgment in this case, (D.E. # 14) and plaintiff has properly moved for a default judgment. (D.E. # 15.)

*A. Plaintiff's Motion for Default Judgment*

A district court has discretion whether or not to grant default judgment. *See Silva v. City of Madison*, 69 F.3d 1368, 1377 (7th Cir. 1995). "[A] default judgment is a harsh sanction," *C.K.S. Eng'r., Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1209 (7th Cir. 1984), but "is justified . . . if the defaulting party has indicated a willful refusal to litigate

5

the case properly." *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). In order to merit default judgment, a plaintiff must be entitled to judgment as a matter of law, assuming "that [plaintiff's] factual allegations are, by reason of the default, true." *Cass County Music Co. V. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995). Additional factors that may influence a court's decision to grant default judgment include whether the defaulting party's failure to defend the case was "merely technical or de minimis," whether the default is due to "dilatory tactics or bad faith," the possible "prejudice to [the] plaintiff," "whether the default was due to excusable neglect," the amount of money at issue, the merits of the plaintiff's case, and the quality and sufficiency of the complaint. 10 James W. Moore et al., *Moore's Federal Practice* § 55.20[2][b] (3d ed. 2006).

These factors weigh towards the granting of default. First, the default is not merely technical. Rather, defendant has refused to participate in this case by avoiding direct service and failing to respond after service by publication.

Second, while defendant has not participated in the case, and thus has not demonstrated "bad faith" or "dilatory tactics" during the litigation itself, his alleged behavior regarding service may qualify as "dilatory tactics." Plaintiff made extensive efforts to serve defendant. Plaintiff first attempted to serve defendant in person when defendant was scheduled to arrive in the United States from China. (D.E. # 7 at 1.) Plaintiff then tried to deliver a summons and a complaint to defendant's home in the Milwaukee suburbs. (*Id.*) Defendant's wife refused to accept service, telling plaintiff's process server that she had been told to do so by defendant's counsel. (*Id.*) This is

6

despite the fact that defendant has accepted other legal documents at his Wisconsin home, and that his wife has accepted documents requiring his own signature. (*Id.* at 2.) Plaintiff also tried to serve defendant through his legal counsel, and at three different addresses in China. (*Id.* at 2.) All of those efforts failed. This reveals that plaintiff has purposely set out to avoid service, and has developed a legal strategy with his wife and his counsel to do so. Defendant's dodging of service has delayed the case for more than thirteen months. In the court's estimation, this stall tactic qualifies as "dilatory." *See, e.g., Giant Screen Sports LLC v. Sky High Entm't*, No. 05 C 7184, 2007 WL 627595, 2007 U.S. Dist. LEXIS 13353, at *13-16 (N.D. Ill. Feb. 27, 2007) (cancelling depositions without explanation and missing court hearings were dilatory tactics); *Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*, No. 03 C 5311, 2006 WL 2434031, 2006 U.S. Dist. LEXIS 58996, at *7-8 (N.D. Ill. Aug. 21, 2006) (refusing to produce documents and concealing accounts constituted dilatory tactics).

      The third criterium, possible prejudice to plaintiff, has not been addressed in any of plaintiff's pleadings. However, plaintiff claims a substantial amount of damages due to defendant's tortious conduct. (D.E. # 1 at 7.) Continuing to go without redress could increase plaintiff's injuries.

      Fourth, the court does not believe that the default can be attributed to defendant's excusable neglect. Plaintiff has diligently tried to serve defendant with a summons and complaint, speaking to his wife and his legal counsel, and repeatedly trying to serve him at his residence in Wisconsin, where he has accepted other legal

7

documents. (D.E. # 7 at 1-3.) It is unthinkable that defendant does not know that plaintiff, his former employer, has initiated legal proceedings against him.

The fifth factor, the amount of money at issue, goes against plaintiff's request for default judgment. Plaintiff asks for judgment in its favor of $243,095.78 plus "exemplary damages" of $442,200, prejudgment interest of $26,179.16, attorney fees of $7,597.50 and costs of $1,402.42. (D.E. # 15 at 1.) Added together, these amounts total over seven hundred thousand dollars, a large sum, particularly as defendant is an individual, not a corporation or government entity. Although the amount of this judgment is flexible, the size of plaintiff's request harms its argument for default judgment. *See Phillips v. Weiner*, 103 F.R.D. 177, 182 (D.Me. 1982) (plaintiff's request for $16,000,000 default judgment denied).

The final two considerations are the quality of plaintiff's complaint and the merits of its case. *See* Moore, *supra*, § 55.20[2][b]. These criteria overlap with the requirement that the court determine whether plaintiff, assuming its factual allegations are true, is entitled to judgment as a matter of law. *See Cass County Music Co.*, 55 F.3d at 265-266. Plaintiff's complaint raises eight different counts, all of which stem from the same factual allegations. (D.E. #1.)

Plaintiff alleges that it hired defendant to serve as the general manager of its Chinese subsidiary. (D.E. # 1 at 2-3, 5). However, defendant went into that position with a motive of his own — plaintiff claims that shortly after assuming his job, defendant began preparing to open his own business in competition with plaintiff. (*Id.* at 2.) As

8

part of these preparations, defendant stole plaintiff's confidential information, including customer lists and price sheets, copied the "manufacturing protocols" for plaintiff's products, forcibly recruited plaintiff's employees, took kickbacks on purchases he made on behalf of plaintiff, used plaintiff's money to purchase products for his rival business, told plaintiff's customers that plaintiff was no longer in business, and diverted customers to defendant's own newly created business. (*Id.* at 2-3, 5). If taken as true, these allegations plainly satisfy the majority of plaintiff's causes of action. Specifically, this court holds that plaintiff is entitled to judgment as a matter of law on its claims of breach of contract, intentional interference with business relationships, fraud, negligent misrepresentation, breach of duty of loyalty, and theft.

Plaintiff's additional claim requires further analysis. It alleges that defendant violated the Indiana Trade Secrets Act ("the Act"). A person violates the Act by misappropriating or threatening to misappropriate a trade secret. *See Paramanandam v. Herrmann*, 827 N.E.2d 1173, 1178-80 (Ind. Ct. App. 2005) (prima facie case under the Act requires showing of actual or threatened misappropriation of trade secrets). The Act defines misappropriation as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret;

9

      (B)    At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

           (i)    Derived from or through a person who had utilized improper means to acquire it;

           (ii)    Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

           (iii)    Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

      (C)    Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Indiana Code § 24-2-3-2 (2006). The Act further defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process," that:

      (1)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

      (2)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

      Based on the allegations in the complaint, defendant did engage in "misappropriation" under subsection (2)(B)(ii) of the Act. *See id.* He took plaintiff's confidential information without its consent, gave the information to third parties, and knew when he was doing so that he had a duty, as plaintiff's employee, to keep the

information private. (D.E. # 1 at 2-3, 5). The court concludes that these actions constitute "misappropriation" under the Act. *See* Indiana Code § 24-2-3-2.

Plaintiff also sufficiently alleges that its customer lists, production specifications, and pricing lists were in fact trade secrets under the Act. Such information is economically valuable when not "readily ascertainable" to competitors, and thus satisfies subsection (1). *See N. Elec. Co. V. Torma*, 819 N.E.2d 417, 425-27 (Ind. Ct. App. 2004) (product specifications were not readily ascertainable to public and thus qualified as trade secrets); *see also Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 919 (Ind. 1993) ("where the duplication or acquisition of alleged trade secret information requires a substantial investment of time, expense, or effort, such information may be found 'not being readily ascertainable' so as to qualify for protection under" the Act). Plaintiff also alleges that the information was "confidential and proprietary." (D.E. # 1 at 5). Under the liberal notice pleading requirements of FEDERAL RULE OF CIVIL PROCEDURE 8(a), this allegation is enough to demonstrate that plaintiff made reasonable efforts to keep the information secret, as required by subsection (2). *See Christensen v. County of Boone*, 483 F.3d 454, 458-59 (7th Cir. 2007) ("Rule 8(a)'s notice pleading standard applies to pendant state law claim that are pleaded in federal court"). Having adequately alleged misappropriation of a trade secret under the Act, plaintiff has therefore made out a prima facie case and is entitled to judgment as a matter of law on his claim. *See Cass County Music Co.,* 55 F.3d at 265-266.

11

The court further concludes that the merits of the plaintiff's case and the quality of its complaint weigh towards granting default judgment. *See* Moore, *supra*, § 55.20[2][b]. Considering all of the applicable factors, plaintiff has a strong case for default judgment. The court will therefore grant default judgment in plaintiff's favor.

*B. Monetary Relief*

When evaluating a motion for default judgment, a court typically conducts a hearing to determine damages. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). However, a court can also determine damages by evaluating documentary evidence or detailed affidavits. *Id.* Plaintiff has provided a relatively detailed affidavit outlining its claim for damages, signed by its chief operating officer. (D.E. # 11 at 5-10). Based on this affidavit, and upon the court's belief that defendant would not participate in any hearing on damages, the court finds a hearing to be unnecessary.

Plaintiff's affidavit attests that during the period of time when defendant was secretly sabotaging its business in China, its Chinese sales decreased by $554,000. (D.E. # 11 at 8). Alleging that it operated at a margin between "forty and forty-five percent," plaintiff claims that it lost "at least" $221,600 due to defendant's behavior. (*Id.*). In addition, plaintiff provides a detailed and specific list of costs that it incurred. These include: items for which plaintiff overpaid so defendant could earn kickbacks, costing plaintiff $85,000; stolen software, $495.48; a car that defendant bought with plaintiff's funds and now uses for his rival business, $12,000; tax now owed by plaintiff due to

12

defendant's purchase of the car, $9,000; attorney's fees, $7,597.50; and litigation costs, $1,402.42. (*Id.* at 8-9; D.E. # 15 at 1, 4.) These costs will be entered in plaintiff's favor.

Plaintiff also alleges that defendant's acts "were willful and malicious," and thus that it "is entitled to receive exemplary damages" of $442,200 under the Act. (D.E. # 11 at 8.) The Act states: "[i]f willfull and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)." Indiana Code § 24-2-3-4 (2006). A trial court has discretion whether to grant such damages. *See Weston v. Buckley*, 677 N.E.2d 1089, 1093 (Ind. Ct. App. 1997) (computation of damages under the Act within sound discretion of trial court).

The court concludes that it will grant the exemplary damages requested by plaintiff. Default judgments are disfavored in cases where large amounts of money are at stake, *see Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) (collecting cases), however, the actions attributed to defendant by plaintiff are truly willful and malicious.  If what plaintiff has alleged is accurate, defendant was placed in a position of trust, and betrayed that trust, over and over, for several years, stealing valuable, secret information from his employer in order to enrich himself, and severely damaging plaintiff's business through lies, threats and outright thievery. In the court's estimation, this behavior merits the exemplary damages available under the Act. *See* Indiana Code § 24-2-3-4.

13

### III. CONCLUSION

Plaintiffs' Motion for Default Judgment (D.E. #15) is hereby **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** by default in favor of plaintiff and against defendant as follows:

> "Defendant Xin Li, also known as Bryant Lee, shall pay $328,095.48 in compensatory damages, $442,000 in exemplary damages, $7,597.50 in attorney's fees, and $1,402.42 in costs to plaintiff, Filter Specialists, Inc."

The clerk shall thereafter treat this action as **TERMINATED**.

**SO ORDERED.**

**ENTER:** September 6, 2007

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT