UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **FILTER SPECIALISTS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 3:05 CV 802 |
| | ) |
| **XIN LI a/k/a BRYANT LEE,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

This court previously granted default judgment to plaintiff Filter Specialists, Inc. (DE # 18.) Defendant Xin Li, also known as Bryant Lee, has now filed a motion to set aside the default judgment. (DE # 21.) Plaintiff responded to the motion (DE # 32), and defendant has replied (DE # 42). For the reasons explained below, the court **GRANTS** the motion to set aside the default judgment. This case is **DISMISSED** for lack of subject matter jurisdiction.

## I. BACKGROUND

Defendant worked for plaintiff from 1998 to 2005, first at plaintiff's headquarters in Indiana and then in China, where defendant ran plaintiff's Chinese operations for several years. In its complaint, plaintiff alleged that, while employed by plaintiff in China, defendant severely violated his employment contract and committed a host of torts, all in effort to set up a rival company designed to steal plaintiff's business. (DE # 1.)

Despite these juicy allegations, this case has been plagued with procedural and jurisdictional problems. The initial concern was personal jurisdiction, namely plaintiff's inability to serve defendant, despite a number of attempts at service, both domestically and at various addresses in China. (*See* DE # 7.) Eventually plaintiff received permission to serve defendant by publication, and did so. (DE # 8; DE # 10.) When defendant failed to respond, plaintiff requested and received an entry of default (DE # 13, 14), which it followed with a motion for default judgment (DE # 15).

This court then raised, *sua sponte*, the issue of subject matter jurisdiction. (DE # 16.) In its complaint, plaintiff alleged that "defendant is a United States citizen with his principle [sic] residence in China and his United States residence . . . [in] Greendale, Wisconsin."[1] (DE # 1 at 1.) These allegations were key, because plaintiff claimed that this court had subject matter jurisdiction over this case via diversity jurisdiction. (*Id.*) However, this court noted that the complaint did not specify where defendant was domiciled, and that if defendant, a United States citizen, were domiciled in China there would be no diversity jurisdiction. (DE # 16); *see Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("in order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State"). The court therefore ordered plaintiff to show where defendant was domiciled. (*Id.*)

---

[1] In its Civil Cover Sheet, plaintiff also alleged that defendant was a "citizen of another state" besides Indiana. (DE # 1-3.)

Plaintiff responded by filing an affidavit from one of its officers, who swore that when defendant worked for plaintiff, he "continued to live and maintain his home in Wisconsin." (DE # 17 at 1.) In addition, the affidavit claimed that defendant's "home telephone number" was in Wisconsin, defendant responded to mail correspondence sent to his home in Wisconsin, defendant indicated he maintained bank accounts in Wisconsin, defendant's 401K distribution form listed his address as being in Wisconsin, and, as part of his severance agreement with plaintiff, defendant received a plane ticket from Shanghai to Milwaukee. (*Id.*)

Relying on these uncontested assertions, the court found that plaintiff had adequately demonstrated that defendant was domiciled in Wisconsin, thus providing a basis for diversity jurisdiction. (DE # 18 at 4-5.) The court then granted default judgment in favor of plaintiff. (*Id.* at 1-14.)

Several months passed, and defendant has now filed the instant motion to set aside the default judgment. (DE # 21.) Defendant claims, citing FEDERAL RULE OF CIVIL PROCEDURE 60(b), that the default judgment should be vacated because (1) this court lacks subject matter jurisdiction, (2) this court's finding that there was subject matter jurisdiction was based on plaintiff's misrepresentations, (3) this court lacks personal jurisdiction, and (4) this court improperly awarded plenary damages. (DE # 22 at 1.) Defendant supported this motion with affidavits from defendant and his wife, and attached several supporting exhibits. (DE # 23, 24, 25, 26.) Plaintiff responded, supplying its own affidavits from various employees (DE # 32, 38), and defendant has

3

replied (DE # 42). Plaintiff also filed a motion to submit additional evidence (DE # 46), which this court granted (DE # 48).

## II. STANDARD OF REVIEW

A district court generally has discretion to vacate or set aside a default judgment, either under the "good cause" standard of FEDERAL RULE OF CIVIL PROCEDURE 55(c) or under the rationales set out by RULE 60(b). *See Robinson Engineering Co. Pension Plan and Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000). The applicable subsection in this case, however, is RULE 60(b)(4), which allows a court to vacate a judgment that "is void." In such situations, the district court's discretion is limited, because "[i]f the underlying judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under RULE 60(b)(4)." *United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995). A judgment is void and should be vacated if the court rendering it lacked subject matter or personal jurisdiction, or acted inconsistently with due process. *Id.* at 1316.

## III. ANALYSIS

Defendant raises several grounds in his motion, but one is dispositive– subject matter jurisdiction. As explained above, a judgment rendered without subject matter jurisdiction is void, *Indoor Cultivation Equipment*, 55 F.3d at 1317, and a district court must dismiss a case where such jurisdiction is lacking. *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993) ("a court may dismiss a case at any time for lack of subject matter jurisdiction").

In this case, plaintiff relies on the diversity jurisdiction provision of 28 U.S.C. § 1332(a)(1) to provide subject matter jurisdiction. (*See* DE # 1 at 1.) This provision grants this court jurisdiction over matters where the parties are citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). As a corporation, plaintiff is a citizen of its place of incorporation (Delaware) and its principal place of business (Indiana). (DE # 1 at 1); *see Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) (under "diversity jurisdiction a corporation is a citizen of two states (though they may coincide): the state in which the corporation is incorporated and the state in which its principal place of business is located"). Because defendant is a U.S. citizen (DE # 1 at 1), plaintiff merely needs to demonstrate that defendant was a citizen of a state other than Delaware or Indiana to establish diversity.

Unfortunately for plaintiff, it indicated in its complaint that defendant's "principle [sic] residence" was in China (DE # 1 at 1), and defendant now argues that he is domiciled in China, and thus not a citizen of any state (DE # 22 at 1). This allegation, if demonstrated, would foil diversity jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("in order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State"); *ISI Internacional, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (no diversity jurisdiction where a partner in one of the defendant law firms was an American citizen domiciled in Canada); *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 805 (7th Cir. 1997) ("for diversity purposes, an

expatriate is deemed neither an alien nor a citizen of any State"). Thus, plaintiff's case depends on this court finding that defendant is domiciled in Wisconsin, not China.

An individual is domiciled in the place where he or she is physically present and intends to remain indefinitely. *See Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993). Domicile is determined at the time the suit is filed, *see Sadat v. Mertes*, 615 F.2d 1176, 1180 (7th Cir. 1980), but "[i]t is well-established that in ascertaining intent to remain for purposes of establishing domicile a party's entire course of conduct may be taken into account." *Pogemiller*, 16 F.3d at 140 (citation omitted). Plaintiff, as the proponent of federal jurisdiction in this case, has the burden of establishing "jurisdictional facts by a preponderance of the evidence." *Meridian Sec. Inc. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006); *see* 32A Am. Jur. 2d Federal Courts § 860 ("Once jurisdictional allegations are challenged, the party asserting diversity has the burden of establishing those allegations with competent proof; this burden may not be shifted to the challenging party."); 32A Am. Jur. 2d Federal Courts § 861 (the "party invoking federal diversity jurisdiction must prove jurisdiction by a preponderance of the evidence").

In his motion, defendant argues that he moved to China in 2002, was domiciled in China when this suit was filed in December 2005, and remains domiciled there. (DE # 22 at 2-4, 13-19.) Defendant admits that he immigrated to the United States from China as an adult, became a U.S. citizen, earned two college degrees in Wisconsin, married a U.S. citizen in Wisconsin, and bought property in Wisconsin. (*Id.* at 15.) However, defendant claims he has not lived or worked in Wisconsin since 1998. From 1998 to

6

2002, he lived in Michigan City, Indiana where he worked for plaintiff, and, he argues, established domicile in Indiana. (*Id.*) In support of this contention, defendant offers his application for U.S. naturalization, which lists his address and residence as being in Indiana from 1998 on. (DE # 26 at 2, 9.) He also offers a photocopy of his Indiana driver's license and copies of 401K documents and other financial statements, all of which show his mailing address to be in Indiana. (*Id.* at 10, 13; DE # 43-2 at 1.)

In 2002, defendant moved to Shanghai, China, where he claims he has "continuously lived and worked," only returning to Wisconsin to occasionally visit his wife and children. (DE # 22 at 15.) Defendant notes that plaintiff paid his rent in Shanghai and his relocation costs to move there, and communicated with him in China. (DE # 24 at 2.) Defendant contends that after his employment with plaintiff ended in August 2005, he continued to live in China, and he informed plaintiff that he "was going to continue to live and work" there. (*Id.* at 3.) Defendant further asserts that he was born in China, has had a Chinese bank account, a long-term Chinese work visa, and a Chinese driver's licence since 2002, and has been a member of the Shanghai Chapter of the American Chamber of Commerce since 2004. (*Id.* at 2-3; DE # 22 at 16.) Defendant also alleges that both of his parents live in Shanghai and that he plans on living nearby to care for them as they age, and to help manage "their financial affairs." (DE # 24 at 5.)

In addition, both parties have alleged that defendant is currently working in China for another company, or at least was doing so when the complaint was filed in December 2005. (DE # 1 at 4; DE # 24 at 4.) Defendant concludes that "[s]ince 2002, I

7

have intended to and continue to intend to remain in China indefinitely" (DE # 24 at 5), and thus argues that he was domiciled in China when this action began in December 2005. (DE # 22 at 17; DE # 42 at 5.)

Plaintiff responds to these contentions by noting that defendant's wife and children live in Wisconsin, and by pointing to a litany of financial and work-related correspondence that defendant directed to his home in Wisconsin. (DE # 32 at 2-5.) This correspondence includes 401K documents, filings defendant made in the U.S. Bankruptcy Court for the Eastern District of Wisconsin, and health and dental insurance information. (DE # 32-4.) Plaintiff also offers an email, dated shortly before this suit was filed, in which defendant requests that plaintiff send mail for him to his wife in Wisconsin. (DE # 32-4 at 12.) Plaintiff notes that defendant had paperwork sent to his home in Wisconsin the entire time he worked for plaintiff, regardless of his location. (DE # 32 at 4.) Plaintiff also draws attention to joint tax returns filed by defendant's wife that list defendant as her spouse, and name their Wisconsin address as their home. (DE # 46-3 at 1; DE # 46-4 at 1.) Relying on these documents, plaintiff contends that defendant never changed his domicile to Indiana, but rather was domiciled in Wisconsin before he began working for plaintiff, and maintained that domicile during his time working in Indiana and while working and living in China.[2] (*Id.* at 4-9.)

---

[2] Defendant admits that his wife made some effort to acquire unemployment benefits for him from the state of Indiana after he stopped working for plaintiff in August 2005. (DE # 23 at 1.) The parties disagree over how far this effort went (*see* DE # 32 at 6), but since the effort does not demonstrate defendant's connection to Wisconsin or China, the court finds it irrelevant.

The court agrees with plaintiff, in part. Even after moving to Indiana and living there from 1998 to 2002, plaintiff did not change his domicile to Indiana. To change one's domicile, one must be physical present in that place, and intend to remain there. *See Pogemiller*, 16 F.3d at 140. Defendant was physically present in Indiana, but his behavior demonstrates that he did not intend to remain there– he was there for a job, not to live permanently. His family stayed behind in Milwaukee, he had much of his important financial and legal correspondence sent to his home in Milwaukee, never moved his family to Indiana, never purchased a home in Indiana, lived in a rental unit that his employer paid for, and was apparently able to move to China without leaving any attachments in Indiana. This flexible and temporary living situation does not indicate that defendant changed his domicile to Indiana. *See, e.g., King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) (notion that a citizen of a state does not lose his or her domicile when moving solely for employment is well-established); *Corns v. Inter-American Univ. of Puerto Rico*, 217 F. Supp. 755, 756-57 (D.P.R. 1963) (Illinois plaintiff who moved to Puerto Rico solely to perform contract did not change domicile to Puerto Rico).

However, China is a different matter. Plaintiff was born and raised in China, and came to the U.S. as an adult, when he was at least 25 years old. (DE # 24 at 1.) He attended Carroll College in Waukesha, Wisconsin, earned an MBA from Marquette University in Milwaukee, and married his wife, a U.S. citizen. (*Id.*) At some point, he and his wife purchased a home in Greendale, Wisconsin, had several children, and

9

defendant became a U.S. citizen, albeit while living in Indiana. Thus, defendant had extensive connections to the Milwaukee area, living there from 1990 to 1998.

But in 2002, defendant was posted by plaintiff to China, his birth country. He took up residency in Shanghai. He attained a Chinese driver's license, opened a bank account at China's Agricultural Bank, and acquired a long term work visa from the Chinese government. (DE # 24 at 1-3.) In addition, he became a member of the Shanghai Chapter of the American Chamber of Commerce, stayed in China after ceasing to work for plaintiff, and has apparently "continuously worked in China for a company located in Shanghai" since. (*Id.* at 3-4.) He further asserts that he intends "to remain in China indefinitely," partly to "care for my elderly parents who live here as well." (*Id.* at 5.) All of these assertions lend strong support to defendant's contention that he intends to stay in China, and thus is domiciled there. *See O'Neal v. Atwal*, 425 F. Supp. 2d 944, 947 (W.D. Wis. 2006) ("To determine where an individual intends to remain, courts look for objective manifestations of intent such as where the individual is employed and registered to vote; where he pays taxes; the location of his bank accounts, personal property and any land he owns; and whether the individual belongs to any clubs or organizations.") (citation omitted).

Plaintiff does not directly contradict defendant's factual claims. Instead, plaintiff argues that they are "self-serving" and that defendant cannot be trusted. But beyond the unproven allegations in its own complaint, plaintiff only provides one reason to doubt defendant's credibility. Plaintiff argues that defendant is lying about his exact

10

address in Shanghai (*see* DE # 34 at 4), since plaintiff asserts that its foreign process server was unable to serve defendant at that location (DE # 32 at 4-5). The court does not find that plaintiff's allegation of failed service at that address makes all of defendant's contentions incredible. The service of process can be quite complicated, and achieving service in an enormous, bustling and dynamic city like Shanghai could be extraordinarily difficult. Thus, this court rejects plaintiff's argument that it should discredit defendant's factual assertions.

Furthermore, plaintiff itself has made several allegations or provided documents that support defendant's contention that, since moving to China in 2002, he has intended to remain in China indefinitely. First, plaintiff alleged, on the first page of its complaint, that defendant's "principle residence" was in China, not in Wisconsin. (DE # 1 at 1.) Because this document establishes the exact date when domicile is determined, *see Sadat*, 615 F.2d at 1180 (domicile is determined at time complaint is filed), this contention is especially damaging. Second, in that same complaint, plaintiff alleged that defendant owns a large portion of, and works for, two Chinese companies. (DE # 1 at 2-4.) Third, an email that plaintiff attaches to its response shows that defendant is directing financial documents to his wife in Wisconsin because "his parents can't receive overseas mails" at their home in Shanghai. (DE # 32-4 at 12.) This undermines plaintiff's claim that defendant's use of his wife's home as his mailing address shows that he remains domiciled in Wisconsin.

11

In addition, in contrast to defendant's living situation in Indiana, when his family stayed in Wisconsin, defendant moved his family to Shanghai to live with him. (DE # 24 at 3; DE # 38 at 1-2.) His wife and children eventually moved back to Wisconsin, and the parties disagree over exactly why they returned, but that dispute is relatively unimportant. What is important is that the move reflected defendant's own intent to stay in China, especially in contrast to his transient stay in Indiana.

Before this court concludes, one final matter must be addressed. In a last ditch effort to preserve its default judgment, plaintiff has filed a motion for a hearing on the motion to set aside the default (DE # 47), which defendant has opposed (DE # 49). When considering a motion for a hearing, "[t]he key considerations are whether the parties have had a full and fair opportunity to present relevant facts and arguments, and whether either party seasonably requested an evidentiary hearing." *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001). Here, plaintiff does not argue that it has not had a full and fair opportunity to present relevant facts.[3] Instead, it wants a hearing so it can presumably attack defendant's credibility in person. (*See* DE # 47 at 1 (stating that "plaintiff believes it would be helpful for the court to assess the Defendant's credibility at a hearing").) But this request is odd given that plaintiff fails to dispute the factual claims that support defendant's argument that he is domiciled in

---

[3] Such an argument would be unpersuasive as this court granted every extension motion requested by the parties, allowed plaintiff to file additional exhibits after briefing ended, and alerted plaintiff early on that it might have a problem with subject matter jurisdiction. (*See* DE # 16.)

China, such as his assertions that he was born in China, his parents live there and he helps take care of them, he belongs to the American Chamber of Commerce in Shanghai, he temporarily moved his family to China, stayed in China and found employment after ceasing to work for plaintiff, and has a long-term Chinese visa, a Chinese driver's license, and a Chinese bank account.[4] Given that plaintiff has been unable to produce any evidence disputing these assertions and does not even contest their accuracy, the court sees no benefit from conducting a hearing. The court concludes that the parties had adequate time to present evidence and arguments, and that a hearing is therefore unnecessary. *See Valentin*, 254 F.3d at 364 (where "the parties were afforded ample time to take depositions, compile written submissions, and prepare briefs, they had a sufficient opportunity to be heard"); *Clark v. Integrity Fin. Group, Inc.*, No. TH00-028-C-T/H, 2000 WL 943863, at *5 (S.D. Ind. June 23, 2000) (denying motion for hearing as unnecessary when resolving motion to dismiss for lack of jurisdiction); *see also Matter of Marchiando*, 13 F.3d 1111, 1114-15 (7th Cir. 1994) (no need to hold hearing to determine truth of uncontested facts in absence of suspicious circumstances).

Given the uncontradicted evidence presented, this court finds that plaintiff has failed to establish by a preponderance of the evidence that defendant was domiciled in

---

[4] Plaintiff asserts that "in the event the decision turns on Defendant's representations that he intends to live in a certain place," a hearing should be conducted so the court can assess defendant's credibility. While the court properly takes defendant's assertion that he intends to remain in China into consideration, *see O'Neal*, 425 F. Supp. 2d at 947 (courts determining domicile may give party's stated intent to remain in a particular place "some weight"), it is by no means the deciding factor in this case.

13

Wisconsin. Even if this court concluded that defendant was at one point domiciled in Wisconsin and required defendant to prove that his domicile had changed, as some federal courts require, *see Slaughter v. Toye Bros. Yellow Cab Co.*, 359 F. 2d 954, 955 (5th Cir. 1966) (when a plaintiff establishes a defendant's former domicile, the burden shifts to defendant to show that the domicile changed), defendant would have carried this burden. That is because the vast weight of the evidence indicates that, when the suit was filed, defendant was physically present in China and intended to remain there.

The court thus concludes that defendant was a U.S. citizen who was domiciled in China at the time this complaint was filed, and, accordingly, there is no diversity jurisdiction in this case. *See Newman-Green, Inc.*, 490 U.S. at 828 (no diversity jurisdiction where one party is a U.S. citizen domiciled abroad). As diversity was the only basis for subject matter jurisdiction, the default judgment previously entered by this court is void under FEDERAL RULE OF CIVIL PROCEDURE 60(b)(4). Defendant's motion to set aside the default judgment (DE # 21) is therefore **GRANTED**. The default judgment (DE # 18) is **VACATED**. Defendant's motion for a hearing (DE # 47) is **DENIED.**

This case is **DISMISSED** for lack of subject matter jurisdiction.

                                                **SO ORDERED.**

**DATE:** July 16, 2008

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT